```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOE HAND PROMOTIONS, INC.,                       :
                                                 :
                         Plaintiff,              :    REPORT &
                                                 :    RECOMMENDATION
        -against-                                :    19-CV-3881 (MKB) (SMG)
                                                 :
LUIS MORALES GONZALEZ, individually and          :
d/b/a/ EL COQUI,                                 :
                                                 :
                         Defendants.             :
                                                 :
-------------------------------------------------------------- x
```
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Joe Hand Promotions, Inc., ("Joe Hand") brings this action against defendant Luis Morales Gonzalez, individually and doing business as El Coqui[1] (collectively, "defendants"), alleging that he unlawfully intercepted and displayed at his commercial establishment two Ultimate Fighting Championship® events, including Ultimate Fighting Championship® 196: McGregor vs. Diaz, broadcast on March 5, 2016 (the "March event"), and Ultimate Fighting Championship® 200: Tate vs. Nunes, broadcast on July 9, 2016 (the "July event"), in violation of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 553 and 605. Compl. ¶¶ 1–2, 10, Dkt. 1. Plaintiff held the exclusive commercial exhibition rights to the broadcast of each event, including all the undercard bouts and commentary. *Id.* ¶ 1; Pl.'s Aff. in Supp. of Mot. for Default J. ("Joe Hand Aff.") ¶ 3, Dkt. 8-2; Commercial Licensing Agreement, Dkt. 8-3. Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered defendants' default on October 3,

---

[1] As used in this Report, "El Coqui" refers to a business entity, which defendants identify as a "bar restaurant" on their Facebook page, *see* Ex. B, Dkt. 8-8, and plaintiff describes more generally as an "establishment," *see* Compl. ¶ 2.

2019.  Dkt. 7.  Plaintiff now moves for default judgment.  Dkt. 8.  The Honorable Margo K. Brodie referred plaintiff's motion to me to issue a report and recommendation.  Order dated December 5, 2019.  For the reasons stated below, I respectfully recommend that plaintiff's motion for default judgment be granted and that damages be awarded in the amounts set forth below. [2]

## DISCUSSION

### I. Liability

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," plaintiff may apply to the court for a default judgment.  Fed. R. Civ. P. 55(a).  Once a default is entered, moreover, "a court is required to accept all…factual allegations as true and draw all reasonable inferences in [plaintiff's] favor."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) (same).

---

[2] Following Judge Brodie's referral, I issued an Order giving defendant one last opportunity to respond to plaintiff's motion for default judgment and directing plaintiff "to serve a copy of th[e] Order promptly by certified mail, return receipt requested, on defendant at his last known address, and to provide the Court with a copy of the return receipt." Dkt. 9.  When plaintiff failed to file proof of service more than four months after the Order had issued, I directed him to file proof of service within a week or, alternatively, write a letter to the Court explaining the delay.  Order dated Apr. 20, 2020.  Plaintiff wrote a letter to the Court describing four diligent yet unsuccessful attempts to serve the defendant with the Court's order.  Joe Hand Letter, Dkt. 10.  Accordingly, because defendant received proper notice when served with the Complaint pursuant to N.Y. C.L.P.R. § 308(4) at the outset of this litigation, Dkt. 5, and because he has apparently moved from his previous address, Dkt. 10, I deem plaintiff's efforts sufficient and proceed to the merits of the motion for default judgment.

2

*A. Federal Communications Act, Section 605(a)*

Plaintiff has alleged violations of the FCA under Sections 605 and 553. Compl. ¶¶ 15–17. Section 605 "generally prohibits the unauthorized use or publication of wire or radio communications," *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), while Section 553(a) "prohibits theft of services offered over a cable system," *J & J Sports Prods., Inc. v. Ferreiras*, 2018 WL 6168557, at *9 (E.D.N.Y. Nov. 20, 2018). "[T]he term 'radio communication,' as used in [Section 605(a)], has long been understood to include satellite transmissions." *J & J Sport Prods., Inc. v. Nacipucha*, 2018 WL 2709222, at *3 (E.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 WL 2709200 (E.D.N.Y. June 5, 2018); *see also Garden City Boxing Club, Inc. v. Focused Enters., Ltd.*, 2007 WL 1655647, at *2 (E.D.N.Y. June 6, 2007) ("Because [plaintiff] alleges that the Event was conveyed via satellite transmission, it has properly pleaded a claim under § 605(a)."). Thus, to make out a claim under Section 605(a), plaintiff must have transmitted the event by satellite and defendant must have intercepted it without authorization.

Here, plaintiff's broadcast "originated via satellite uplink, and was subsequently re-transmitted interstate to cable systems and satellite television companies via satellite signal." Compl. ¶ 7. Defendants then displayed the event in a commercial setting without plaintiff's permission. *Id.* ¶¶ 2, 10–12. Though plaintiff does not know the exact method defendants used to intercept the event, *see* Joe Hand Aff. ¶ 9, "all that needs to be alleged (to state a § 605 claim) is that the communication *originated* via satellite." *Ferreiras*, 2018 WL 6168557, at *7; *see also Joe Hand Promotions, Inc. v. Bernal*, 2019 WL 885930, at *3 (E.D.N.Y., Feb, 22, 2019) ("[A]ny one of the various technologies by which [plaintiff's] satellite broadcast could have been

3

intercepted is sufficient to establish liability."). Thus, plaintiff has stated a claim under Section 605(a).[3]

B. *Federal Communications Act, Section 553*

Conduct that violates Section 605(a) may also violate Section 553(a). *Int'l Cablevision v. Sykes*, 75 F.3d 123, 132–33 (2d. Cir. 1996). When it does, liability need be considered only under Section 605(a), which provides for a greater recovery. *See Bernal*, 2019 WL 885930, at *2; *J & J Sports Prods., Inc. v. El Sonador Café Rest., Inc.*, 2017 WL 6397731, at *2 (E.D.N.Y. Dec. 14, 2017); *Kingvision Pay-Per-View v. Castillo Rest. Corp.*, 2007 WL 841804, at *3 (E.D.N.Y. Jan. 16, 2007).

C. *Liability of Individual Defendant*

Plaintiff seeks to hold defendant Gonzalez individually liable for displaying the events at El Coqui. Compl. ¶ 2; Pl.'s Mem. in Supp. of Mot. for Default J. ("Pl.'s Mem.") at 13–14, Dkt. 8-1. Establishing individual liability under Section 605(a) requires showing either "contributory infringement," which arises when the individual "authorize[d] the violations," or "vicarious liability," which arises when the individual "had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." *J & J Sports Prods., Inc. v. Tellez*, 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011) (citing *J & J Sports Prods., Inc. v. LDG Williams, LLC*, 2011 WL 5402031, at *5–*6 (E.D.N.Y. Nov. 7, 2011)). By contrast, simple allegations of ownership of the establishment

---

[3] In contrast, a handful of complaints filed in J & J Sports Production cases have failed to state a claim under Section 605(a) because they do not specify the method through which the *plaintiff* transmitted the material as opposed to identifying how the defendant intercepted the material. *See J & J Sports Prods., Inc. v. Ferreiras*, 2018 WL 6168557, at *6 (E.D.N.Y. Nov. 20, 2018) (refusing to grant liability under 605(a) where the "[c]omplaint never allege[d] that the Event was transmitted over satellite or that it was a satellite communication").

without more are generally not sufficient to establish individual liability. *See J & J Sports Prods., Inc. v. 291 Bar & Lounge*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009).

Here, plaintiff alleges that Gonzalez "operated, maintained and controlled the establishment known as El Coqui," had the "right and ability to supervise the activities" of El Coqui, and "authorized, directed, directly participated in and/or assisted in [El Coqui's] unauthorized exhibitions of the [events]." Compl. ¶ 2. These allegations, accepted as true upon defendants' default, are sufficient to warrant imposing individual liability on Gonzalez. Moreover, Gonzalez's Facebook page corroborates plaintiff's allegations; Gonzalez identifies himself as the "owner and founder of El Coqui bar restaurant" and the El Coqui Facebook page advertises the March event. Ex. B[4] at 2–3, Dkt. 8-8. The Court therefore recommends holding Gonzalez and El Coqui jointly and severally liable for the damages recommended below.

## II. Remedies

Unlike those concerning liability, allegations relating to damages are not deemed admitted upon default. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Greyhound Exhibitgroup*, 973 F.2d at 158. However, "these steps are not necessary as long as [the court] ensure[s] that there was a basis for the damages specified in the default judgment." *Joe Hand Promotions, Inc. v. Levin*, 2019 WL 3050852, at *1 (S.D.N.Y. July 12, 2019) (internal quotation marks and citation omitted) (alterations in original). A court may make this

---

[4] Though Exhibit B does not include page numbers, the pages numbers used here and throughout this report reference the pages of the PDF document filed on ECF, Dkt. 8-8.

determination upon a review of detailed affidavits and documentary evidence. *See Fustok v. Conticommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989).

 A. *Damages under Section 605 of the FCA*

Section 605 provides that a plaintiff may recover either actual damages or statutory damages "of not less than $1,000 or more than $10,000… for each violation." 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages may be increased "by an amount of not more than $100,000 for each violation" where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). "Courts have interpreted the showing of an event on a single night as one violation for the purposes of statutory and enhanced damages." *Bernal*, 2019 WL 885930, at *3 (quotation marks omitted) (quoting *El Sonador*, 2017 WL 6397731, at *3). Here, plaintiff requests $1,000 pursuant to Section 605(e)(3)(C)(i), which is the statutory minimum, for each of the two violations. Pl.'s Mem. at 15.

Because plaintiff seeks only the statutory minimum, no further analysis is required. I note, however, that to determine statutory damages, courts typically calculate the flat-fee rate and the per-person rate and then award the greater of the two. *J & J Sports Prods., Inc. v. Hot Shotz Bar, Inc.,* 2018 WL 5020175, at *7 (E.D.N.Y. July 13, 2018) (collecting cases). The flat-fee rate is "the amount that the establishment would have paid to license the event and broadcast it legally." *Bernal*, 2019 WL 885930, at *4 (citing *J & J Sports Prods., Inc. v. GPN Bar, Inc.*, 2016 WL 8139019, at *5 (E.D.N.Y. Dec. 15, 2016), *report and recommendation adopted*, 2017 WL 435785 (E.D.N.Y. Feb. 1, 2017)). To calculate the per-person amount, the court "multiplies the number of patrons in the establishment by the fee that an average customer would pay to view the fight at home on a pay-per-view channel." *Bernal*, 2019 WL 885930, at *4. Plaintiff

6

has submitted a rate card indicating that the license to display each event lawfully would have cost defendants $788.  Rate Card, Dkt. 8-4; Joe Hand Aff. ¶ 7.  Plaintiff has not, however, submitted any information about the rate a customer would have paid to watch each event at home or the number of patrons who attended the March event.

The rate card amount is close to the statutory minimum amount, and I would therefore recommend granting plaintiff's application for $1,000 in damages for each event even if awarding that amount were not statutorily required.  *See Bernal*, 2019 WL 885930, at *4–*5 (awarding flat-fee amount where plaintiff failed to provide both the number of patrons and the pay-per-view price of the event).

Plaintiff is also entitled to enhanced damages because defendants' violation of the statute was willful.  Willfulness is generally "presumed in cases arising under § 605 where the defendant defaults."  *Bernal*, 2019 WL 885930, at *5; *see also Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously nor do television sets connect themselves to cable distribution systems.").  In calculating enhanced damages, "[c]ourts in this Circuit typically award…a multiple of the statutory damages award."  *Hot Shotz*, 2018 WL 5020175, at *9 (collecting cases).  A court's decision to award an amount equal to, double, or triple the statutory damages depends on factors such as "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks."  *Id.*; *see also Traffic Sports USA v. La Camisa Negra Rest. & Bar Corp.*, 2012 WL 3064129, at *5 (E.D.N.Y. May 23, 2012) (collecting cases), *report and recommendation adopted*, 2012 WL 3065523 (E.D.N.Y. July 27, 2012).

7

Courts awarding the statutory minimum of $1,000 typically award enhanced damages of $3,000, even when defendants are small establishments with few patrons. *See Traffic Sports USA v. Modelos Restaurante, Inc.*, 2012 WL 3637585, at *6 (E.D.N.Y. Aug. 1, 2012) (awarding statutory damages of $1,000 and enhanced damages of $3,000 against defendant who displayed plaintiff's broadcast to 15 patrons and advertised the event with signs in front of the business), *report and recommendation adopted*, 2012 WL 3626824 (E.D.N.Y. Aug. 22, 2012); *J & J Sports Prods., Inc. v. Bernal*, 2010 WL 3463156, at *5 (E.D.N.Y. July 28, 2010) (awarding statutory damages of $1,000 and enhanced damages of $3,000 against "small commercial establishment" that displayed broadcast to 10 patrons), *report and recommendation adopted*, 2010 WL 3463162 (E.D.N.Y. Aug. 30, 2010); *J & J Sports Prods., Inc. v. Forbes*, 2008 WL 5263732, at *5–*6 (E.D.N.Y. Dec. 17, 2008) (awarding statutory damages of $1,000 and enhanced damages of $3,000 against defendant who displayed plaintiff's broadcast to 10 patrons); *J & J Sports Prods., Inc. v. Rodrigues*, 2007 WL 1726462, at *7 (E.D.N.Y. Apr. 19, 2007) (awarding statutory damages of $1,000 and enhanced damages of $3,000 even though there was no evidence that defendant "advertised or took any other actions to solicit business based on the exhibition of the Event"). In making such awards, courts reason that $3,000 in enhanced damages "serve[s] as a reasonable deterrent against future violations." *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491.

Accordingly, the Court respectfully recommends awarding $3,000 in enhanced damages for each violation. Treble damages are particularly appropriate given defendants' apparent willfulness. Plaintiff has submitted exhibits showing defendant Gonzalez and his son advertising the events on Facebook, clearly to the detriment of Joe Hand and competitors who paid to legally display the broadcast. *See* Ex. B at 3 (advertising the March event with the additional enticement

8

of "free parking" and "free entry"); *id.* at 6 (posting Facebook status which says: "If you can't watch the ufc fight tonight let me know I will hook you up"). Additionally, plaintiff's investigator reported that approximately 25 people were in attendance at the July event, which is more than were present at the establishments involved in some of the cases cited above. Aff. of Robert Taylor, Dkt. 8-5. It is also clear from the Facebook advertisements that defendants unlawfully displayed plaintiff's broadcast on two separate occasions and are therefore repeat violators. *See* Ex. B (advertising both the March and July event).

For all these reasons, the Court respectfully recommends that plaintiff be awarded $1,000 per event in statutory damages and $3,000 per event in enhanced damages, for a total of $4,000 per event.

B.  *Attorneys' Fees and Costs*

As the prevailing party, plaintiff is entitled to reasonable attorneys' fees and costs under the FCA. 47 U.S.C. § 605(e)(3)(B)(iii). However, plaintiff's counsel has provided no documentation of his fees and instead requests that he be permitted to file a separate fee application. Pl.'s Mem. at 5, n. 5. I therefore respectfully recommend that plaintiff's request for an award of attorneys' fees be denied without prejudice, and that plaintiff's counsel be permitted to submit a supplemental fee application and billing records within 14 days of the date of this Report and Recommendation.

As to costs, plaintiff requests a total of $495, which includes a $400 filing fee and $95 to effectuate service. Decl. of Jon D. Jekilek ¶ 10, Dkt. 8-6. The Court takes judicial notice of the district's $400 filing fee, *Bernal*, 2019 WL 885930, at *6, and therefore recommends awarding costs in that amount. However, since plaintiff has not submitted an invoice documenting the service fee, the Court recommends denying plaintiff's request for $95. *See Tacuri v. Nithin*

9

*Constr. Co.*, 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015). Plaintiff may, however, submit an invoice for the service fee as an attachment to the supplemental fee application.

## CONCLUSION

For all the reasons stated above, I respectfully recommend that plaintiff's motion for default judgment be granted, and that plaintiff be awarded statutory damages of $1,000 per event and enhanced damages of $3,000 per event, for a total of $8,000 under the FCA. In addition, I recommend awarding plaintiff $400 in costs. Finally, I recommend that plaintiff be permitted to submit an application for attorneys' fees and service costs by May 22, 2020.

Any objections to the recommendations made in this Report must be made within fourteen days after the filing of this Report and Recommendation and, in any event, on or before May 22, 2020. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit). Counsel for plaintiff shall serve a copy of this Report and Recommendation on defendants by letter and promptly file proof of service with the Court.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
May 8, 2020

U:\#ECC 2019-2020\19-3881 Joe Hand Promotions, Inc. v. Gonzalez\Joe Hand Promotions Inc. v. Luis Moralez Gonzalez RR FINAL.docx